Perry **BRADSHAW**, Warren D. Tucker, and Bernard C. Kelly, Plaintiffs,

v.

Melvin **LAIRD**, Secretary of Defense, et al., Defendants.

Civ. A. No. 399–69–N.

United States District Court, E. D. Virginia, Norfolk Division.

Nov. 18, 1970.

Stanley E. Sacks, Sacks, Sacks & Tavss, Norfolk, Va., for plaintiffs.

John A. Field, III, Asst. U. S. Atty., Norfolk, Va., David J. Anderson, Atty., Civil Division, Dept. of Justice, Washington, D. C., for defendants.

## OPINION AND ORDER

KELLAM, District Judge.

This is a class action on behalf of all members of the National Association of Aeronautical Examiners, employed at seven Naval Air Rework Facilities throughout the United States. Plaintiffs are civilian blue collar workers employed by the Department of the Navy as Aircraft Examiners at the Naval Air Rework Facility in Norfolk, Virginia. This action challenges the defendants' implementation of the statute under which plaintiffs' wage rates are established. Plaintiffs contend that the defendants have failed to comply with the Congressional mandate expressed in 5 U.S.C. § 5341, applicable since September, 1966, which provides:

> The pay of employees excepted from chapter 51 of this title by section 5102(c) (7) of this title shall be fixed and adjusted from time to time as nearly as is consistent with the public interests in accordance with prevailing rates. * * *

Before September 1966, 10 U.S.C. § 7474 applied to the establishment of wage rates for civilian employees in the Department of the Navy.

> The Secretary of the Navy shall establish rates of wages for employees of each Naval activity where the rates

are not established by other provisions of law to conform as nearly as is consistent with the public interest, *with those of private establishments in the immediate vicinity.*

Plaintiffs' attack is two pronged; generally, they challenge the defendants' use of the percentage differential for establishing the wage scale for Aircraft Examiners. Primarily, however, plaintiffs' claim is directed against the actual amount of the differential which they contend is too low. Defendants argue that use of the percentage differential is appropriate for determining plaintiffs' wages, that wage determination is a matter of executive discretion, and that the actual establishment of the percentage differential was based on permissible considerations and resulted in fixing lawful and appropriate wages for the plaintiffs.

This Court recently considered the propriety of the percentage differential in establishing wage scales for non-graded positions under the same statute. In Rogers v. Laird, 319 F.Supp. 1 (E.D. Va.1970), we held that use of the percentage differential was reasonable and proper for setting wage scales where it involved numerous trade classifications and wage markets, covering large areas of the county, and the evidence otherwise established its use feasible. Basically, the considerations existing in Rogers v. Laird exist here.

The wages of Aircraft Examiners are based upon a percentage differential over the specific mechanics which they supervise, that is, over the machinist, electrician, electronics mechanics, etc. The wages for the mechanics are set in individual labor market areas based upon what is generally paid for the same kinds of work in private establishments in the labor market area. A labor market area is considered to be that area wherein an individual can change his place of employment without having to change his place of living.

In ascertaining the pay of the mechanics, the Navy surveyed those firms in the labor market area [1] which employed mechanics who used essentially the same skills required of mechanics employed by the Navy. In its surveys of private industry, the Navy was unable to find a position to duplicate the Navy's position of Aircraft Examiner, nor have plaintiffs shown that a duplicate position exists in private industry. Here, no complaint is made of the pay of the mechanics, but only of the Aircraft Examiners. They complain of the use of the percentage differential over the pay of the mechanics they supervise in fixing their pay, and that the percentage differential used for them is too low. The issue here is not whether the Court would have granted the plaintiffs a higher percentage of differential or have used some other means to fix the wage; the issue is, whether the Navy has complied with the statute or acted arbitrarily. If the matter is one within the discretion of the Navy, the Court has no jurisdiction. Aircraft Examiners are responsible for deciding exactly what work must be done to the various systems and components of an airplane when it is brought to the facility for overhaul. Since the Examiners' position bears an obvious relationship to that of the mechanics, comparing the two wage scales seems fair and appropriate. Naturally the Aircraft Examiners receive a proportional wage increase whenever the mechanics receive an increase. This occurs almost annually.

Since plaintiffs' attack is directed principally at the actual amount of the differential rather than its use, a closer examination of that claim is necessary. Specific differential determinations are based on judgments of the skills required and responsibilities inherent in the work. This is also true of all positions for which the percentage differential is used. Before 1963, the percentage differential for Aircraft Examiners

---

1. There are about 150 labor market areas in the United States, and 7 major areas where Aircraft Examiners are concerned.

and three other positions was 12%. In 1963, the differential for the Examiners and two other positions was increased to 16%, while the differential for the other position was increased to 20%. Since 1963, all the other positions have received higher differentials than the Aircraft Examiners. In 1969, the differential for Aircraft Examiners was increased to 19.2%, but plaintiffs contend that as far back as 1963, their differential should have been 25%.

There is no factual basis for plaintiffs' contention other than the recommendations of some subordinate wage specialists and auditors. None of these recommendations was approved after consideration by the proper authorities. Plaintiffs' contention is that their differential should be the same as the related position of Planner and Estimator, which is 25%. However, plaintiffs do not dispute that the Planner and Estimator position requires a higher degree of skill and responsibility. Pointing to the increased complexity and sophistication of aircraft in recent years, plaintiffs claim that these developments have increased their duties and responsibilities. Certainly this is true, but plaintiffs overlook the obvious fact that the duties and responsibilities of the aircraft mechanics, on whose wage scale their differential is based, have increased to the same extent. Since the wage scale of the mechanics has increased annually to reflect these technological advances, and the Examiners' differential is applied to the mechanics' wages, the Examiners' pay likewise reflects these developments. That the differentials of other positions have increased more than that of Aircraft Examiners can have no bearing on the merits of plaintiffs' case since there is little correlation between positions and the others may require greater degrees of skill and responsibility.

As has been indicated, plaintiffs base their claim for increased pay on various recommendations that the differential be increased to 25%. These recommendations were made by subordinates whose investigations were rather limited and, in some cases, based solely on briefings by the Examiners themselves. Plaintiffs ignore the testimony of Phillip Meyerson, Director of the Personnel Management Division of the Office of Civilian Manpower Management, that the recommendations for and against increasing the Examiners' differential was too high. Mr. Meyerson testified that he and his staff reviewed all the information available to them in 1969, and in their "unanimous judgment," they concluded that the duties and responsibilities of Aircraft Examiners did not call for an increase in their percentage differential.

Part of this controversy concerns the improvement of the Civil Service Commission, which in 1967, was assuming responsibility for setting the wages of civilians within the Department of the Navy. Because of this situation, the Navy consulted with the Commission before making any changes in its compensation arrangements. The Commission was preparing to implement its new coordinated Federal Wage System which would bring more than a dozen different wage systems from various federal agencies into a single system under the Commission's direction. Many positions to be included in the new system, including that of Aircraft Examiner, were not graded for pay purposes and were substantially different from the pay systems used for most federal blue collar workers. The Commission had these ungraded positions "set aside" until further studies could be made to determine how to work them into the coordinated Federal Wage System. Being "set aside," however, did not mean that those positions could not receive pay increases. This is obvious, because in 1969, plaintiff's percentage differential was increased from 16% to 19.2%. Plaintiffs attempt to put the Commission's request, that the Navy not make changes in its pay system while the new wage system was being implemented, in a nefarious light, claiming that the request was the sole reason the differential for

Aircraft Examiners was not increased. The evidence, as already related, simply does not support this contention. Moreover, Mr. Meyerson testified that the decision was independent of the Commission's request not to change the pay system.

■ Plaintiffs have labeled the refusal to authorize the increase in differential an "arbitrary, unjustified and discriminatory denial of pay increases * * * that is required by law." The determination not to authorize an increase was an executive decision, reasonable on its face and within the bounds of the discretion prescribed by the statute. Plaintiffs have not shown that the decision was arbitrary, capricious, or unfair in any way. Under these circumstances, this Court should not interfere with the determinations made by the Executive Branch of the Government.

■ The statutory provisions governing wage setting for non-graded civilian employees specifically require that these pay scales be "consistent with the public interest." This has been interpreted as a delegation to the Executive of a wide discretion in fixing the wages of its employees. See Rogers v. Laird, supra. Accordingly, judicial review of an Executive decision is properly limited to those circumstances where the Executive has exceeded its authority or its action is clearly wrong. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); United States v. Shimer, 367 U.S. 374, 381, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961). Probably most relevant in describing the Court's function under these circumstances is the Court of Claims recent statement in Daniels v. United States, 407 F.2d 1345, 1347, 187 Ct.Cl. 38 (1969):

> It should be clear from the cited authorities that this court will not purport to tell the Secretary of the Navy what salary formula and base he should adopt. Our concern is simply to determine whether plaintiffs have met their heavy burden of proving that the Secretary's action in this in-

stance was so arbitrary as to be clearly wrong.

Plaintiffs have not shown that the decision not to authorize an increase in differential was so arbitrary as to be clearly wrong. To the contrary, defendants have offered affirmative evidence that the determination was within its discretion. Congress vested authority for these decisions in the Executive, apparently because of its expertise and familiarity with the particular consideration involved. That Branch of Government is much better qualified to pass on the question of wages than the Court. Since plaintiffs have not shown that this authority was improperly exercised, their action is dismissed.